IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Richard L. Sealey,

          Petitioner,

v().                                          Case No. 1:14-cv-285-MLB

Bruce Chatman,

          Respondent.

_____/

**ORDER**

Before the Court is Petitioner Richard L. Sealey's motion (Dkt. 89) to reopen this matter for consideration of his claim challenging Georgia's lethal injection procedures. Respondent opposes the motion (Dkt. 90).

**I. Background**

Petitioner, a prisoner currently under a sentence of death by the State of Georgia, filed a petition for a writ habeas corpus pursuant to 28 U.S.C. § 2254 in this Court challenging his convictions and sentence. On November 9, 2017, Judge Willis B. Hunt, Jr., entered an order denying the petition (Dkt. 66). In denying relief, Judge Hunt determined that

Petitioner's Ground XXIII, in which Petitioner claimed that his execution under Georgia's lethal injection procedures would violate his Eighth Amendment rights, must be brought under 42 U.S.C. § 1983 rather than in a habeas corpus proceeding (Dkt. 66 at 100 (citing *Tompkins v. Secretary, Dept. of Corrections*, 557 F.3d 1257, 1261 (11th Cir. 2009) ("A § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures.")).

The Eleventh Circuit recently issued an opinion in *Nance v. Comm'r, Georgia Dep't of Corr.*, 981 F.3d 1201, 1203 (11th Cir. 2020) *cert. granted sub nom Nance v. Ward*, Case No. 21-439, 2022 WL 129503 (U.S. Jan. 14, 2022),[1] in which it determined that when a state prisoner's method-of-execution challenge, if successful, would have the necessary effect of preventing the prisoner's execution, the claim must be raised in a petition for a writ of habeas corpus brought pursuant to § 2254 rather than in a § 1983 civil rights action.  In his now-pending motion, Petitioner contends that because he sought "an injunction barring Georgia from

---

[1] As indicated by the citation, the Supreme Court recently granted Michael Nance's petition for a writ of certiorari, and argument will be held in that case in April of this year.

executing him by lethal injection" (Dkt. 89 at 6) in his petition, and because lethal injection is the only authorized method of execution in Georgia, his success on the merits of that claim would render Georgia unable to carry out his death sentence. Petitioner thus argues that his claim must be considered under § 2254 per *Nance*, and he requests that this action be reopened for this Court to consider his claim.

Respondent disagrees with Petitioner's contention that he has challenged the constitutionality of lethal injection as a form of execution and contends that, even after *Nance*, the claim Petitioner raised in his § 2254 petition must be brought pursuant to § 1983. Respondent also points out that this Court denied Petitioner's claim, albeit without prejudice, and, as a result, before he can litigate this claim before this Court under § 2254, he must seek authorization from the Eleventh Circuit to file a successive petition under 28 U.S.C. § 2244(b)(3)(a). Because Petitioner has not sought pre-authorization from the Eleventh Circuit, Respondent contends that this Court lacks jurisdiction to consider the claim.

## II. Discussion

Having reviewed the record, this Court concludes that Respondent is correct that the lethal injection claim Petitioner raised in his petition must be pursued in a § 1983 suit.[2] To be clear, the Eleventh Circuit in *Nance* did not change its precedent that challenges to execution procedures must generally be brought pursuant to § 1983. *Nance*, 981 F.3d at 1206. Rather, the court carved out an exception to that rule with respect to "a type of method-of-execution challenge that would be cognizable only in habeas," that is "a constitutional challenge seeking to permanently enjoin the use of" a state's sole, statutorily-authorized method of execution. *Id.* For example, the plaintiff in *Nance* alleged that, because of his unique medical situation, the Constitution bars Georgia from executing him by any form of lethal injection, and lethal injection is Georgia's only statutory method of execution.

By contrast, in this action Petitioner did not raise a method-of-execution challenge that, if successful, would prevent his execution by lethal injection in any form. Ground XXIII of Petitioner's amended

---

[2] The Court thus declines to address Respondent's second argument that Petitioner's claim is now successive.

4

petition for a writ of habeas corpus is captioned "Petitioner Cannot Be Subjected to Lethal Injection Because to Do So Would Be Cruel and Unusual Punishment in Violation of Petitioner's Rights under the Fifth, Sixth, Eighth and Fourteenth Amendments" (Dkt. 40 at 165). While that heading may indicate that he challenges the implementation of lethal injection generally, the discussion of the claim in his amended petition and in his brief in support of the petition (Dkt. 47 at 252-91) clearly demonstrates that he challenges only (1) the protocols and procedures adopted by the Georgia Department of Corrections (GDOC) to carry out executions (including the manner in which the GDOC procures its lethal injection drugs), and (2) the State's Lethal Injection Secrecy Act, O.C.G.A. § 42-5-36(d), which makes information about the source of the State's lethal injection drugs and about the GDOC staff implementing lethal injections a state secret not subject to disclosure.[3]

In his arguments in support of his Ground XXIII, Petitioner points out that Georgia encountered difficulty obtaining certain drugs in its

---

[3] In his reply brief, Petitioner requested that the Court dismiss his lethal injection claim as unripe with leave to refile when the claim ripens (Dkt. 63 at 150-51). Judge Hunt did not grant that request as he clearly dismissed the claim as not cognizable under § 2254.

5

lethal injection protocol and, as a result, has had to change its drug protocol multiple times. At present, it appears that Georgia uses a single drug, pentobarbital, to execute condemned prisoners, but Petitioner contends that there is no FDA-approved source of that drug. The State must therefore resort to a compounding pharmacy to produce its pentobarbital, rendering the drug illegally obtained and potentially tainted and/or unsafe such that use of the drug presents a risk of substantial pain intolerable under the Eighth Amendment. Petitioner also complains that, because of the Secrecy Act, the State refuses to inform death row prisoners about the pharmacy that produces the pentobarbital, which improperly limits Petitioner's ability to determine whether the drug is appropriately produced and violates his due process and Sixth Amendment rights. Petitioner further contends that the GDOC's protocols and procedures do not contain the safeguards necessary to ensure that the drugs will not cause him intolerable pain or that the personnel carrying out the execution are qualified to do so without mutilating Petitioner's body or causing him unnecessary pain or discomfort in violation of his Eighth Amendment rights. In closing, Petitioner requests only that the Court grant him habeas corpus relief

with respect to his death sentence without providing specifics of the relief he seeks.

Contrary to his arguments in his motion (Dkt. 91), Petitioner did not allege in his petition or his brief (1) that lethal injection is unconstitutional, (2) that Georgia's lethal injection statute is unconstitutional, or (3) that the State cannot constitutionally execute him using lethal injection. Neither does he seek an injunction barring the State from executing him via lethal injection. Where Petitioner argues that "Georgia's use of lethal injection as a method of execution is inconsistent with the evolving standards of decency that mark the progress of a maturing society, [and] constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments," (Dkt. 40 at 172) it is clear from the context of his discussion that Petitioner means that the manner in which the GDOC has obtained its lethal injection drugs, adopted its protocols, and carries out executions violates the Constitution, not that lethal injection generally is unconstitutional.

Georgia's lethal injection statute states:

> All persons who have been convicted of a capital offense and have had imposed upon them a sentence of death shall suffer such punishment by lethal injection. Lethal injection is the continuous intravenous injection of a substance or substances

> sufficient to cause death into the body of the person sentenced to death until such person is dead.

O.C.G.A. § 17-10-38(a).

Under the statute, the choice of the substances used and the protocols established to deliver those substances is left to the GDOC. *Hill v. Owens*, 738 S.E.2d 56, 60-64 (Ga. 2013). Indeed, in his brief in support of his petition, Petitioner acknowledges that "Georgia's lethal injection statute does not limit the drugs that the Georgia can use when carrying out executions" and notes that the State can change its protocol at will (Dkt. 47 at 281-82).

A ruling by this Court that Georgia's chosen drug or the protocol implemented to carry out an execution violated the Constitution would not *necessarily* imply the invalidity of Petitioner's death sentence. *See Nance*, 981 F.3d at 1206. Rather, in the event that this Court determined, for example, that the State improperly sourced its lethal injection drug or that the protocol adopted by the GDOC created an intolerable risk of substantial pain, this Court could craft relief that simply required the State to change its drug, the manner in which it obtained the drug, or its procedures for delivering the drug. Likewise, Petitioner's challenge to § 42-5-36(d), the Secrecy Act, does not implicate the validity of

8

Petitioner's death sentence as this Court could simply require the State to disclose the information without vacating the death sentence.

Moreover, even if this Court were to read Petitioner's Ground XXIII as expansively as he argues, he nonetheless fails to raise a valid facial challenge to Georgia's lethal injection law. In order to state such a claim, Petitioner must "first identify[] a 'feasible, readily implemented' alternative procedure that would 'significantly reduce a substantial risk of severe pain,'" *Bucklew v. Precythe*, 139 S. Ct. 1112, 1119 (2019) (quoting *Baze v. Rees*, 553 U.S. 35, 52 (2008)), and he has not done so. *Baze*, the opinion in which the Supreme Court first announced the requirement that method-of-execution challenges must include a proposed alternative method of execution was issued more than five years before Petitioner initiated this action. Petitioner's attorneys were undoubtedly aware of the requirement when they drafted the petition, and if they had intended to raise a facial challenge to lethal injection generally, they would have included an alternative method as part of their claim. In the absence of a proposed alternative procedure Petitioner cannot reasonably claim that he has raised a facial challenge to lethal

injection such that his success on the claim would necessarily imply the invalidity of his death sentence.

### III. Conclusion

This Court thus concludes that *Nance* does not require that the claim raised in Petitioner's Ground XXIII be brought pursuant to § 2254. Judge Hunt was correct in denying the claim without prejudice to Petitioner raising the claim in a § 1983 complaint. Accordingly, Petitioner's motion to reopen this matter (Dkt. 89) is **DENIED**.

**SO ORDERED** this 1st day of March, 2022.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE